CLENDON THOMAS, INC., an Oklahoma corporation, Plaintiff,

v.

OKLAHOMA NATIONAL BANK, an Oklahoma Banking corporation, et al., Defendants.

Civ. No. 72–145.

United States District Court,
W. D. Oklahoma,
Civil Division.

Jan. 25, 1973.

Murray Cohen, Oklahoma City, Okl., for plaintiff.

William R. Burkett, Oklahoma City, Okl., for U. S. A.

T. R. Benedum, Norman, Okl., Lynn J. Bullis, Jr., Oklahoma City, Okl., for Pool Mortgage.

Ross O. Swimmer, Oklahoma City, Okl., for Federal National Mortgage.

Kenneth J. Wilson, Oklahoma City, Okl., for Tanglewood Corp.

John R. Couch, Oklahoma City, Okl., for Spence, d/b/a Karrol Spence & Associates.

Merson, Campbell & Merson, Oklahoma City, Okl., for Okla. Nat.

## MEMORANDUM OPINION

DAUGHERTY, Chief Judge.

The parties hereto agreed as shown by the Pre-Trial Conference Order filed herein on January 3, 1973, that the issues involved in this litigation would be separated with the Court to try the first set of issues at a non-jury hearing with the remaining issues to be tried at a later date before a jury.

The three non-jury issues as set out in the Pre-Trial Conference Order are:

1. In what period of time could proper, valid demand be made for the 2½% Retainage Fund represented by the Letter of Credit; and

2. The validity of complaints pertaining to defects presented within the authorized period of time; and

3. The effect of the mutual release on the respective parties.

The Court has conducted a non-jury evidentiary hearing on these issues at the conclusion of which the Court makes the following findings of fact and conclusions of law and decisions:

This controversy involves the construction of the Tanglewood Apartments in Ada, Oklahoma. Plaintiff was the contractor. Defendant Tanglewood Corporation (Tanglewood) is the owner. Defendants Pool Mortgage Company (Pool), Federal National Mortgage Association (FNMA) and the United States of America (USA–HUD) are all interested in the financing of said project. The Defendant Karrol Spence d/b/a Karrol Spence and Associates (Spence) was the architect on said project and Defendant Oklahoma National Bank (Bank) is a stakeholder in the case having issued a Letter of Credit to Pool at the request of the Plaintiff.

The Completion Assurance Agreement entered into between the Plaintiff and the Defendants Tanglewood and Pool contained the following paragraph:

"2. The Lender shall maintain such Fund as a separate trust account to be disbursed as follows:

(a) To the Contractor or party making such deposit during the course of construction, as may be deemed necessary by the Lender and with prior written approval of the Commissioner, or his authorized agent.

(b) To the Contractor or party making such deposit, the balance of such fund so deposited remaining upon completion of the entire project, as defined in said Construction Contract, and approval thereof by the Commissioner or his authorized agent; *except that there shall be withheld from the payment of said balance an amount equal to 2½% of the total amount of the Construction Contract, which sum is to be retained in such account for a period of one year from the date of sub-* *stantial completion as defined in FHA Supplementary General Conditions to the Construction Contract. Said sum shall be held as a fund to guarantee against defects in construction due to faulty materials or workmanship or damage to the mortgaged premises resulting from such defects, which defects or damage become apparent within one year after the date of the aforesaid substantial completion.* Said sum may be used for the correction of such defects or damage in the event the Contractor fails to make such corrections. The Contractor's liability for such corrections is not limited by the amount of such sum.

(c) To the Lender the entire Fund or balance remaining therein in the event of a default by the Contractor under the Construction Contract to be used by the Lender to indemnify it and the Owner as the case may be, for any loss, damage or expense whatsoever which they may suffer by reason of the Contractor's failure to properly perform said Construction Contract. In any event, any and all disbursements from said Fund shall be made only upon the prior written approval of the Commissioner, or his authorized agent." (Italics supplied)

To satisfy paragraph 2(b) of the above provision and at the request of Plaintiff Defendant Bank on March 22, 1971 issued a Letter of Credit in the amount of $16,145.93. The said Letter of Credit then became the 2½% retainage fund called for in said paragraph 2(b).

Under dates of April 15, 1971, September 2, 1971, October 5, 1971 and November 18, 1971 (as shown by Government Defendant Exhibits 4, 5, 7 and 6 respectively) the Defendant United States of America communicated to Plaintiff in writing claimed construction defects in the apartment project. Under dates of September 16, 1971 and January 4, 1972 (as shown by FNMA Defendant Exhibits 2 and 4) the Defendant FNMA communicated to Plaintiff in

writing claimed construction defects in the apartment project and under dates of May 12, 1971, May 24, 1971, August 12, 1971 and August 19, 1971 (as shown by Tanglewood Defendant Exhibits 1, 7, 3 and 8 respectively) the Defendant Tanglewood communicated to Plaintiff in writing claimed construction defects in the apartment project.

In this case Plaintiff requests injunctive relief against all Defendants restraining them from proceeding against the said Letter of Credit and the fund it represents on the basis that the same is not liable or available to them for their alleged construction defects because the Letter of Credit and fund automatically expired on February 19, 1972 or one year subsequent to the date of the Certificate of Substantial Completion which was dated February 19, 1971. Defendants oppose this contention. This case has been removed to this Court by the Defendant United States of America pursuant to 28 United States Code § 1441(a).

The Court finds from the evidence that all of the above mentioned claimed construction defects communicated by the Defendants to Plaintiff were timely made within the one-year period specified in the above quoted portion of the Completion Assurance Agreement. In this connection the Court further finds and concludes that by communicating said alleged construction defects to the Plaintiff such actions served to hold or freeze the fund covered by the Letter of Credit and constituted valid demands timely made on the guarantee of said fund as recited in the Completion Assurance Agreement. This is the Court's interpretation of said contract provisions. The Court rejects Plaintiff's position that something more is needed to make said fund liable for alleged construction defects. However, in this connection the Court is not deciding at this hearing whether said alleged construction defects or any of them as asserted by Defend-

ants are in fact construction defects within the contemplation of said contract provision, such matter or matters being reserved for the Jury trial on the second issue of this litigation.

The Court further finds and concludes that based on the testimony of the Plaintiff himself the mutual release worked out among certain of the parties herein in July of 1971 did not serve to relieve Plaintiff of his responsibility for any defects in construction due to faulty materials or workmanship within the contemplation of the above-quoted portion of the Completion Assurance Agreement. Therefore the Court finds and concludes that said mutual release had no effect on Plaintiff's responsibility to Defendants for construction defects in the apartment project and the liability of said 2½% retainage fund as represented by the Letter of Credit for the same.

Thus, the Court finds and concludes that all of the alleged construction defects communicated by Defendants to Plaintiff as set out in the aforementioned Exhibits were timely made against the Letter of Credit and the fund it represented within the required one-year period and that the Letter of Credit and fund it represents is liable as a guarantee for such construction defects as are later found to be valid and not remedied. The Court further finds that the said mutual release had no effect on and did not release Plaintiff's responsibility for valid construction defects in the apartment project.

The case will now proceed to the second separated issue. The Court will conduct a Pre-Trial Conference on this issue before setting the matter for jury trial. It is ordered that Judgment be withheld on the decisions reached by the Court on the first separated issue as set out above until the verdict of the jury is reached on the second issue following which event the Court will enter a final judgment covering all issues in the case.